```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
UNITED STATES OF AMERICA,                :
                                         :       23 Crim. 107 (LGS)
                                         :
                                         :       OPINION AND ORDER
              -against-                  :
                                         :
JAHLIL FORD,                             :
                         Defendant.      :
                                         :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Defendant Jahlil Ford was indicted on February 27, 2023, on one count of possession of ammunition after a felony conviction in violation of 18 U.S.C. § 922(g)(1) and (2), and one count of possession of a firearm after a felony conviction in violation of § 922(g)(1) and (2). Defendant moved to dismiss both counts of the indictment, contending that § 922(g)(1) is unconstitutional. For the reasons discussed below, the motion is denied.

**I.     BACKGROUND**

The following facts are taken from the allegations made in submissions by the Government. The Complaint alleges that "[D]efendant, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess ammunition [and a firearm] . . . [both of] which had previously been shipped and transported in interstate and foreign commerce." *See* 18 U.S.C. § 922(g)(1).

Defendant was convicted of a felony, Attempted Robbery in the Second Degree, on November 7, 2019. *See* N.Y. Penal Law § 160.10(3). On or about January 24, 2022, after Defendant had been released from prison for that prior conviction, he discharged a firearm several times at a vehicle. Law enforcement officers later recovered six shell casings in the

vicinity of where Defendant had discharged his firearm. Defendant was found sitting in a different vehicle when police officers approached him. Through the window of the vehicle, a police officer observed a firearm in plain view. After seeing the firearm, police officers arrested Defendant. All six recovered shell casings and the firearm were manufactured outside of New York.

On August 21, 2023, Ford moved to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment of the U.S. Constitution.

## II. Legal Standard

The Second Amendment recognizes "an individual right to keep and bear arms for self-defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2125 (2022).[1] "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2129-30. When analyzing statutes that implicate the Second Amendment right, "[t]he government must . . . justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

The framework for assessing whether a regulation is "consistent with the Nation's historical tradition of firearm regulation" differs according to the nature of the problem the regulation is meant to solve. *Id.* at 2130-32. "[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131.

"When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." *Id.* at 2132. "[A]nalogical

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Id.* at 2133.  In other words, "a modern-day regulation" need not be "a dead ringer for historical precursors" to survive constitutional scrutiny.  *Id.*  Instead, the regulations must be "relevantly similar" in light of "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense."  *Id.* at 2132-33.

### III. DISCUSSION

Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional after *Bruen*.  This argument fails because § 922(g)(1) is constitutional under binding Second Circuit precedent.  The Government also satisfies the constitutional test established in *Bruen* by demonstrating that § 922(g)(1) aligns with the Nation's historical tradition of firearm regulation.

**A. Second Circuit Precedent Compels Denial of Defendant's Motion.**

The motion to dismiss is denied based on binding Second Circuit precedent that 18 U.S.C. § 922(g)(1) "is a constitutional restriction on the Second Amendment rights of convicted felons."  *United States v. Bogle*, 717 F.3d 281, 281-82 (2d Cir. 2013) (per curiam).  As explained below, *Bogle* remains good law and is therefore binding on this Court.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that "the Second Amendment confer[s] an individual right to keep and bear arms." *Id.* at 595.  The Court stated that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."  *Id.* at 626.  In *McDonald v. City of Chicago*, the Court reaffirmed, "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons."  561 U.S. 742, 786 (2010).

3

The Second Circuit adopted these statements as the basis for its holding in *Bogle*. 717 F.3d at 281-82. In *Bogle*, the Second Circuit held that "§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons." *Id.*; *United States v. Davila*, No. 23 Crim. 292, 2023 WL 5361799, at *2 (S.D.N.Y. Aug. 22, 2023) ("*Bogle*'s holding . . . remains binding on this Court.").

Defendant argues that *Bogle* is no longer good law because it conflicts with the holding in *Bruen*. This is incorrect. The Supreme Court stated in *Bruen* that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of . . . [certain] licensing regimes . . . which often require applicants to undergo a background check" and "are designed to ensure . . . that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." 142 S. Ct. at 2138 n.9; *see also id.* at 2157 (Alito, J., concurring) (reasoning that the holding in *Bruen* does not "disturb[] anything that [the Court] said in *Heller* or *McDonald* . . . . Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun."); *id.* at 2162 (Kavanaugh, J., concurring) ("Nothing in [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."). Because *Bruen* does not find that policies that restrict gun ownership to "law-abiding, responsible citizens" are unconstitutional, it does not disturb *Bogle*'s holding. *Bogle* therefore remains binding and requires denial of Defendant's motion. *See Davila*, 2023 WL 5361799, at *2. The out-of-circuit district court cases Defendant cites are not binding on this Court.

Defendant argues that felons are part of "the people" protected by the Second Amendment, which states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend.

4

II. Defendant is correct that "the people" in the text of the Second Amendment includes felons. *See Heller*, 554 U.S. at 580-81 (interpreting "the people" in the Second Amendment to mean "all Americans," noting that, as used in the Constitution, "the people" is "a term of art" that "unambiguously refers to all members of the political community, not an unspecified subset."). But this does not make § 922(g)(1) unconstitutional. While convicted felons are within the scope of the Second Amendment, they are also subject to its limitations within the parameters established in *Bruen*.

### B. Section 922(g)(1) is Consistent with the Nation's Historical Tradition of Firearms Regulation.

In addition to *Bogle*'s holding that § 922(g) is constitutional, the Government has also met its burden of showing a historical tradition of firearms regulation that is sufficiently analogous to § 922(g)(1) to uphold the statute. *Bruen* requires that a firearm restriction be "consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126. One set of analogous historical regulations involves laws categorically disqualifying groups from possessing firearms based on a judgment that the group could not be trusted to adhere to the rule of law. The Supreme Court has emphasized the historical significance of "the predecessor to our Second Amendment" in the 1689 English Bill of Rights, to which *Heller* looked in holding that the Second Amendment recognizes an individual right to bear arms. *See* 554 U.S. at 593. The 1689 English Bill of Rights states, "Protestants . . . may have Arms for their Defence suitable to their Conditions, *and as allowed by Law*." *Bruen*, 142 S. Ct. at. 214-42 (quoting 1 Wm. & Mary c. 2, § 7, in 3 Eng. Stat. at Large 417 (1689)) (emphasis added). Around the same time, the English government had passed a law restricting any Catholic who refused to make a declaration renouncing his or her faith from possession of weapons and ammunition. 1 Wm. & Mary c. 15, in 6 The Statutes of the Realm 71-73 (1688).

5

The English practice of legislating status-based disarmament, tied to a group's perceived dangerousness, continued in colonial America.  *See* Saul Cornell, A Well-Regulated Militia: The Founding Fathers and the Origins of Gun Control in America 28-29 (2006) ("Laws disarming groups such as slaves, freed blacks, Indians, and those of mixed-race ancestry were common.");[2] Michael A. Bellesiles, *Gun Laws in Early America: The Regulation of Firearms Ownership, 1607-1794*, 16 L. & Hist. Rev. 567, 576 (1998) ("[L]egislatures followed the English example in denying the right to own guns to potentially dangerous groups: [B]lacks, slave and free; Indians; propertyless whites; non-Protestants or potentially unruly Protestants.").  As in seventeenth-century England, colonial Catholics were subject to disarmament in at least Maryland, Virginia and Pennsylvania.  *See* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 263 (2020).

These regulations are sufficiently analogous to § 922(g)(1).  Historical regulations must be analogous in "how and why the regulations burden a law-abiding citizen's right to armed self-defense."  *Bruen*, 142 S. Ct. at 2132-33.  The "how" is identical -- certain categories of people are disqualified from possessing firearms.  The "why" is an adequately close fit.  The disqualified groups were deemed too untrustworthy or dangerous to possess firearms.  Section 922(g)(1) similarly disarms individuals with a history of harming society, presumably because they may pose a renewed threat upon release.

Defendant contends that disarming felons is relatively new and therefore inconsistent with the Nation's historical tradition.  Defendant argues that the lack of older historical

---

[2] Viewing those groups as dangerous or untrustworthy is odious and contrary to American law and societal values today.  The Court must nevertheless apply the framework established in *Bruen*, which requires assessing whether historical firearms regulations are "relevantly similar" to those today.  142 S. Ct. at 2132.  The historical regulations need not be commendable, or even lawful today under other constitutional provisions, to serve as relevant comparators for the *Bruen* historical analysis.

regulation barring felons from possessing firearms is evidence that the challenged regulation is inconsistent with the Second Amendment. But this misstates the Government's burden. *See Bruen*, 142 S. Ct. at 2132 ("[C]ases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach. The regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders."); *Davila*, 2023 WL 5361799, at *5 ("Section 922(g)(1) is such a regulation, as the lethality of today's weaponry, the ubiquity of gun violence, the size and anonymity of the population, and the extent of interstate travel were unknown at the Founding."). In short, Ford's insistence on a "historical twin," rather than a "representative historical analogue," demands more than *Bruen* requires.

## IV.  CONCLUSION

For the foregoing reasons, the motion to dismiss the indictment is DENIED. The Clerk of the Court is respectfully directed to close the motion at Dkt. 36.

Dated: October 30, 2023
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**